# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) Case No. | 2:23-mj-0125 CKD |
| Alecsa Ojeda De Oregel | ) | |
| *Defendant(s)* | ) | |

**FILED**
Aug 29, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of May 11, 2023 in the county of San Joaquin in the Eastern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of heroin |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Kevin Rundle, Special Agent,
United States DOJ, DEA
*Printed name and title*

Subscribed and sworn to me telephonically.

Date: August 29, 2023

*Judge's signature*

City and state: Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT & ARREST WARRANT**

I, Kevin Rundle, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is submitted in support of a criminal complaint and arrest warrant charging Alecsa OJEDA De Oregel, with a violation of Title 21 U.S.C. § 841(a)(1) (distribution of heroin).

2. I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since January 29, 2020. In September 2019, I was selected by DEA to be a Special Agent, and on January 29, 2020, I graduated from the DEA Basic Agent Training Class at the DEA Academy in Quantico, Virginia. During this four-month training I received specialized training from the DEA in the investigation of illicit drug trafficking including, but not limited to, Title 21 drug laws, drug identification, drug detection and interdiction, firearms proficiency, and asset forfeiture. This intensive course familiarized me with conduct common among traffickers and how drug-trafficking organizations operate. Through practical training exercises, I was also able to become familiar with conducting surveillance and undercover operations in order to disrupt and dismantle drug-trafficking organizations.

3. I began my career in federal law enforcement in June 2011, as a DEA Intelligence Research Specialist ("IRS"). During September 2011, I graduated from DEA's 11-week Basic IRS training course where I was instructed in topics including drug identification, report writing, analytical presentations, legal training, and the use of law enforcement databases. After graduating, I spent four years at DEA Headquarters working international money laundering cases, particularly targeting Mexican Cartels and a variety of independent money launderers moving United States drug proceeds through Colombia, Mexico, and throughout the Caribbean. From 2015 to 2018, I served abroad for DEA in the Philippines, where I continued to work international drug-trafficking cases. Furthermore, in coordination with numerous federal agencies at the US Embassy in Manila, I regularly collected investigative intelligence on drug traffickers in the region and identified strategic drug-trafficking trends.

4. Through my training, experience, and interaction with other experienced special agents, task force agents and officers, and other drug investigators, I have become familiar with the methods,

tools, and trends employed by drug traffickers to manufacture, smuggle, safeguard, store, transport, and distribute drugs, and to communicate with other participants to accomplish such objectives. These methods include: the use of a vast network of associates and co-conspirators; instrumentalities to facilitate drug trafficking activities including real property and assets such as vehicles, vessels, and aircraft; multiple forms of counter surveillance; and complex communication methods which include various codes to deter detection by law enforcement and the use of an array of electronic devices including, but not limited to, cellular phones, pre-paid or debit calling cards, wireless communications technology such as paging devices, computers, and social media platforms.

5. The facts and information set forth herein are based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating individuals as related to me and other law enforcement personnel, my review of investigative reports, and discussions with other federal, state, and local law enforcement officials. This affidavit is intended to show only that there is sufficient probable cause for the requested complaints and warrants and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. § 841(a)(1) (distribution of heroin) has been committed by Alecsa OJEDA De Oregel.

## II.  PROBABLE CAUSE

### A. Investigation Initiation

7. Based on law enforcement's investigation to date, I believe that Alecsa OJEDA De Oregel is a trafficker of heroin and other controlled substances and is currently operating within the Eastern District of California. Based upon the ongoing federal investigation detailed below, I believe that OJEDA De Oregel has been actively distributing heroin in the Eastern District of California beginning in 2022 and continuing through the present date.

8. More specifically, during 2022, Sacramento District Office (SDO) agents identified a heroin and fentanyl trafficking organization controlled by Alberto OJEDA Lopez, who is based in Mexico and coordinates drug shipments across the US-Mexico border. OJEDA Lopez's daughter, Alecsa OJEDA De Oregel, lives in Stockton, CA, and is responsible for distributing kilogram quantities

of drugs on behalf of her father's organization.

9. In fact, based upon the investigation described below, there is probable cause to believe that OJEDA De Oregel coordinated and delivered to law enforcement officers approximately 1 kilogram of a mixture and substance containing heroin on May 11, 2023. Based on this information, I am requesting a criminal complaint from this Court, alleging that, on or about May 11, 2023, OJEDA De Oregel violated 21 U.S.C. § 841(a)(1) by distributing a mixture or substance containing a detectable amount of heroin.

### B. Controlled Purchase of Approximately One Kilogram of Heroin from Alecsa OJEDA De Oregel on May 11, 2023.

10. On April 20, 2023, a Task Force Officer operating in a UC capacity, used a recorded line to call the phone number, 209-808-9157, which is a phone number used by Alecsa OJEDA De Oregel. The UC explained to OJEDA De Oregel that the UC was from Yuba City and had spoken to her several months ago. OJEDA De Oregel told the UC that 209-808-9157 was her personal telephone number, and that the UC should contact her on her other line, 209-561-9819. (This x9819 phone number had been provided to the UC previously by Alberto OJEDA Lopez in connection with an earlier heroin transaction in 2022.) Later, in recorded calls and text messages between the UC and OJEDA De Oregel, the UC arranged for the purchase of one kilogram of heroin from OJEDA De Oregel on May 11, 2023.

11. On May 11, 2023, the UC and OJEDA De Oregel agreed to meet at the Home Depot located on Hammer Lane, in Stockton, CA, which is located in San Joaquin County. OJEDA De Oregel told the UC that she had to pick up her children at 2:55 p.m., and that she could meet the UC around 3:15 PM.

12. Prior to the controlled purchase, the UC was outfitted with a concealed recorder and transmitter, which was worn for the duration of the controlled purchase. The UC was provided with $18,000.00 in law enforcement funds. The UC then drove an unmarked UC vehicle to the Home Depot parking lot.

13. At the same time, agents established surveillance at 4607 Garibaldi Avenue, Stockton, CA, where they observed OJEDA De Oregel, identified by her driver's license photograph, exit the residence and get into a silver Toyota Corolla bearing license plate 8WGB836. While under law

enforcement surveillance, OJEDA De Oregel proceeded to depart the residence and drive to Hoover Elementary School, which is located at 2900 Kirk Avenue, Stockton, CA.  Two juveniles got into the silver Toyota Corolla, and OJEDA De Oregel then drove back to the residence at 4607 Garibaldi Avenue.  The juveniles exited the vehicle and entered the residence.  OJEDA De Oregel remained in the vehicle and departed again still driving the silver Toyota Corolla.  Agents continued surveillance of OJEDA De Oregel as she drove to the Home Depot.

14. At approximately 3:17 p.m., the UC sent a text message to OJEDA De Oregel indicating that he was parked near a taco truck.  At approximately 3:18 p.m., the UC observed OJEDA De Oregel (identified based upon a driver's license photograph) driving a silver Toyota Corolla in the Home Depot parking lot.  The UC notified OJEDA De Oregel of the UC vehicle color and type.

15. OJEDA De Oregel parked on the driver side of the UC vehicle and got out of the silver Toyota Corolla carrying a white Old Navy shopping bag.  OJEDA De Oregel then got into the UC vehicle passenger seat.  OJEDA De Oregel introduced herself to the UC as "Alecsa."  She then took a black grocery bag out of the Old Navy shopping bag, placed it on her lap, and opened it, removing a kilogram of suspected heroin in a vacuum sealed bag.  OJEDA De Oregel then handed the suspected heroin to the UC.  The UC provided OJEDA De Oregel with $18,000.00 in law enforcement funds.

16. The UC and OJEDA De Oregel proceeded to have a general discussion during which OJEDA De Oregel related that she only sells drugs in the "Valley" and to an individual that resides in Yuba City, CA.  OJEDA De Oregel also told the UC that she used to transport "Work" (i.e., drugs) to different states to include Oregon, Kansas, and Nebraska.  The UC told OJEDA De Oregel that her father, OJEDA Lopez, had mentioned to the UC that he could possibly get "pills" (by which the UC meant counterfeit oxycodone pills containing fentanyl).  OJEDA De Oregel told the UC that she would talk to her father about the "pills" and fentanyl.

17. Following this exchange, OJEDA De Oregel returned to the silver Toyota Corolla and departed the parking lot, while under surveillance by law enforcement agents.  OJEDA De Oregel returned to the residence located at 4607 Garibaldi Avenue, Stockton, CA, and surveillance was terminated.

18. Following the May 11, 2023, controlled purchase, law enforcement agents met with the

UC and recovered the vacuum sealed package containing the approximately 1 kilogram of suspected heroin. Agents observed that inside the vacuum sealed package was a brown, hard substance, which—based on their training and experience—appeared to be heroin. Though it was not field tested, the suspected heroin was sent to the laboratory for analysis. The laboratory results indicated that the substance contained heroin, that the net weight of the substance was 1010.2 grams (+/- .2 grams), and that the heroin purity was 46%.

### III. CONCLUSION

19. Based on the foregoing, I submit that there is probable cause to issue a criminal complaint and arrest warrant for Alecsa OJEDA De Oregel for a violation of Title 21 U.S.C. § 841(a)(1) (distribution of heroin) occurring on or about May 11, 2023 in San Joaquin County.

[NOTHING FOLLOWS ON THIS PAGE]

### IV.  REQUEST FOR SEALING

20. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant. I believe that sealing this document is necessary because OJEDA De Oregel is not currently in federal or state custody and thus is not yet aware that she may be subject to federal charges. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness. Specifically, OJEDA De Oregel may elect to flee and/or evade law enforcement, if she becomes aware of the federal charges or arrest warrant. Moreover, it is possible that OJEDA De Oregel may attempt to conceal evidence of her crime.

Respectfully submitted,

/s/
Kevin Rundle
Special Agent
United States Department of Justice, Drug Enforcement Administration (DEA)

Subscribed and sworn to me telephonically.

August 29, 2023

The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA AARON D. PENNEKAMP